2021 IL App (1st) 173031-U

FIRST DISTRICT,
FIRST DIVISION
June 21, 2021

No. 1-17-3031

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 98 CR 30731 |
| | ) | |
| MATTHEW CARMICHAEL, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Pierce concurred in the judgment.
Justice Hyman specially concurred.

**ORDER**

¶ 1    *Held*:   Defendant moved for leave to file successive postconviction petition, claiming that his 35-year sentence for a murder that he committed at the age of 19 violated *Miller v. Alabama*, 567 U.S. 460 (2012), and the proportionate penalties clause of the Illinois constitution. We affirm the circuit court's denial of leave to file, since defendant failed to satisfy the cause-and-prejudice test for a successive postconviction petition.

¶ 2    Following a jury trial, defendant Matthew Carmichael was convicted of first-degree murder, attempted first-degree murder, and aggravated discharge of a firearm. He was sentenced

to concurrent terms of 35 years' imprisonment for the murder and 30 years' imprisonment for the attempted murder. On direct appeal, this court granted defense counsel's motion for leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and affirmed his convictions. *People v. Carmichael*, No. 1-01-2564 (2003) (unpublished order under Supreme Court Rule 23). We also affirmed the circuit court's dismissal of defendant's subsequent *pro se* postconviction petition (*People v. Carmichael*, No. 1-05-0097 (2006) (unpublished order under Supreme Court Rule 23)) and denial of leave to file a successive postconviction petition (*People v. Carmichael*, 2016 IL App (1st) 141192-U).

¶ 3        On July 13, 2017, defendant sought leave to file another successive postconviction petition, claiming that because he was 19 at the time of these offenses, his sentence violated the principles articulated in *Miller v. Alabama*, 567 U.S. 460 (2012). The circuit court denied leave to file, finding that defendant failed to meet the cause-and-prejudice test. For the reasons that follow, we affirm.

¶ 4                                    BACKGROUND

¶ 5                                    Trial Evidence

¶ 6        Defendant was convicted of first-degree murder of Alvonzo Williams, attempted first-degree murder of Edward McCree and Sparkie Ashford, and aggravated discharge of a firearm. Shortly after midnight on November 10, 1998, defendant, a member of the Gangster Disciples street gang, fired six or seven shots at three individuals he saw emerging from a gangway, fatally wounding Williams. Although he was with fellow gang members at the time of the shooting, he admitted to police that he was the only shooter. Defendant's friend Eddie Bass had been shot and killed one year earlier by members of a rival gang. He fired at the three approaching individuals in retaliation for Bass' death and because he thought they were coming to kill him.

¶ 7        At the sentencing hearing, the court considered defendant's presentence investigation report (PSI), which reflected that he was "kicked out of school" in eleventh grade for failure to attend classes. He had previously been employed at his grandfather's auto shop but "just stopped going over there" in 1997 and had not obtained other employment. In jail, he had enrolled in GED classes and planned to take classes in auto mechanics.

¶ 8        The PSI also indicated that defendant had a "rough" childhood because of his parents' substance abuse problems, although he denied any neglect or physical abuse. He joined the Gangster Disciples at age 14 but quit shortly after being arrested on these charges because he wanted "to turn [his] life around, go the right way." His criminal history included juvenile convictions for robbery, possession of a controlled substance, possession of cannabis, and unlawful use of a weapon, and adult convictions for criminal trespass to a vehicle and possession of cannabis.

¶ 9        The court also considered the victim impact statement of Williams' sister describing the effects of Williams' death on his family, and a letter in mitigation from defendant's great-aunt describing him as "a good boy that got off on the wrong track" and endured an "extremely negative" childhood, "lived in deplorable conditions and gang infested communities" and was "forced to the streets for survival."

¶ 10        The State argued that defendant deserved a sentence "far in excess of the minimum" because he "went out in a cold, calculated, bloodthirsty manner" to "hunt somebody down" in a gang retaliation. His extensive criminal history included "a crime of violence," and "his past reflects that he has failed to take responsibility for his actions throughout his life."

¶ 11        The defense asked the court to consider defendant's "bad upbringing," arguing that his father was "emotionally abusive to everybody, physically abusive to his mother, *** [and]

thwarted any attempt [defendant] had to socialize normally, stay away from gangs." He argued that defendant "can be a productive member of society. He's too young to toss away at this point, and that's what we're asking for, is a chance for him to demonstrate that somewhere down the line."

¶ 12    Prior to imposing sentence, the court commented:

"This case is so typical of the kind of devastation that is visited on both families due to the senseless gang violence that permeates our city. Not only does the Williams family lose their brother, but your family also loses a son, a father, etcetera, and for the life of me I cannot figure out why when you gangbangers are out on the street you never think about this day, you never think about the consequences of your actions, what's going to happen if I shoot this gun and more importantly from the selfish nature of gang activity it would seem to me you would be thinking what's going to happen to me."

¶ 13                              Postconviction Proceedings

¶ 14    On July 13, 2017, defendant filed a second motion for leave to file a successive postconviction petition challenging his sentence based on *Miller*, 567 U.S. at 465, which prohibits life sentences for juvenile offenders unless the court considers the defendant's "youth and its attendant characteristics." Defendant argued that "new research in neurobiology and developmental psychology" regarding brain immaturity defines adolescents as anyone between the ages of 10 and 24. He also cited a March 2013 scientific paper describing adolescence as a "period of neural imbalance" that may cause "rewards and emotions [to] affect behavior more strongly than rational decision making processes."

¶ 15    Defendant alleged that he was prejudiced by the trial court's failure to consider this brain science or his potential for rehabilitation at his sentencing hearing. Despite the trial court's

"anemic sentencing pronouncement," defendant had "spent his 19 years of incarceration reforming and rehabilitating himself" by earning a GED, becoming a registered barber, working toward an associate's degree, and maintaining good relationships with his family, fellow inmates, and correctional staff.

¶ 16    On October 13, 2017, the court found that defendant had failed to satisfy the cause-and-prejudice test for filing a successive postconviction petition. The court observed that the *Miller* decision was issued in June 2012, prior to the time defendant filed his initial motion for leave to file a successive postconviction petition, and that *Miller* "is limited to juvenile offenders." In addition, defendant had not been sentenced to life in prison and the court had considered his youth and rehabilitative potential in imposing the discretionary sentence of 35 years in prison.

¶ 17                                    ANALYSIS

¶ 18    The Post-Conviction Hearing Act allows a convicted defendant to assert a substantial denial of his constitutional rights under the United States Constitution or the Illinois Constitution or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). We review the circuit court's denial of leave to file a successive postconviction petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13. Because the Act contemplates the filing of a single petition (*People v. Holman*, 2017 IL 120655, ¶ 25 (citing 725 ILCS 5/122-3 (West 2010)), leave to file a successive petition will only be granted if the defendant raises a colorable claim of actual innocence or alleges sufficient facts to satisfy the cause-and-prejudice test. *Id.* ¶ 26; *People v. Smith*, 2014 IL 115946, ¶ 34. To establish "cause," defendant must show an objective factor external to the defense that prevented him from raising his claim in his initial postconviction proceeding. *Holman*, 2017 IL 120655, ¶ 26. To establish "prejudice," defendant must show that the claimed constitutional error "so infected his trial that the resulting conviction violated due process." *Id.*

¶ 19     Here, defendant has not alleged sufficient facts to establish prejudice, as his claims are not legally cognizable under either *Miller* or the proportionate penalties clause of the Illinois Constitution.

¶ 20     In *Miller*, 567 U.S. at 479, the United States Supreme Court held that a juvenile offender may not be sentenced to mandatory life in prison without possibility of parole. Our supreme court has explained that Miller's language is " 'significantly broader than its core holding.' " (*People v. Buffer*, 2019 IL 122327, ¶ 25 (quoting *Holman*, 2017 IL 120655, ¶ 38)). To prevail on a *Miller* claim, "a defendant sentenced for an offense committed *while a juvenile* must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." (Emphasis added.) *Id.* ¶ 27. A *de facto* life sentence for a juvenile is any sentence greater than 40 years. *Id.* ¶ 41.

¶ 21     Defendant plainly does not fall within the ambit of *Miller* for two reasons. First, *Miller*'s eighth amendment protections apply only to juveniles, not to young adults like defendant. *People v. Harris*, 2018 IL 121932, ¶ 61 (rejecting defendant's *Miller* claim because "for sentencing purposes, the age of 18 marks the present line between juveniles and adults. As an 18-year-old, defendant falls on the adult side of that line."); *People v. Herring*, 2018 IL App (1st) 152067, ¶ 103 ("[T]he [Supreme] Court drew a line at the age of 18 years; while it acknowledged that the line was arbitrary, it 'must be drawn.' ") (quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005)). Second, defendant's 35-year sentence is not a *de facto* life sentence under *Buffer*, 2019 IL 122327, ¶ 41. Thus, he could not prevail on a *Miller* claim even if he were eligible for the eighth amendment protections afforded juvenile offenders.

¶ 22  Defendant nevertheless argues that his sentence violates the proportionate penalties clause of the Illinois Constitution, which requires that "all penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; see *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 69 (the proportionate penalties clause is not determined in lockstep with the eighth amendment but may provide additional limitations on penalties). Under this provision, a sentencing statute is unconstitutional as applied when it "is shocking to the moral sense of the community" based upon an " 'evolving standard[] of decency that mark[s] the progress of a maturing society.' " *People v. Miller*, 202 Ill. 2d 328, 339-40 (2002) (*Leon Miller*) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

¶ 23  Imposing a 35-year sentence for a crime involving the murder of one victim and the attempted murder of two others does not shock the moral sense of the community. This sentence is well within the statutory 20-to-60-year range for the offense of first-degree murder (730 ILCS 5/5-8-1(a)(1)(a) (West 1998)) and is distinguishable from cases leaving no discretion to the trial judge due to mandatory sentencing requirements. Moreover, the sentence accurately reflects defendant's personal culpability in these shootings. Contrast with *Leon Miller*, 202 Ill. 2d at 341 (mandatory life sentence under multiple-murder statute "does not accurately represent defendant's personal culpability" where the 15-year-old defendant served as a lookout during the shooting but never handled a gun).

¶ 24  This court has rejected defendants' attempts to extend *Miller* principles via the proportionate penalties clause to crimes personally committed by young adults. In *People v. Handy*, 2019 IL App (1st) 170213, the 18 ½-year-old defendant was sentenced to 60 years' imprisonment for home invasion, armed robbery, aggravated kidnapping, and aggravated

criminal sexual assault. In seeking leave to file a successive postconviction petition, he argued that he was entitled to resentencing under the proportionate penalties clause due to his youth, his rehabilitative potential, and the peer pressure he faced from his codefendants. *Id.* ¶¶ 31-32. In rejecting that argument, we emphasized his individual culpability for his crimes:

> "Whether a defendant physically committed the offense is a significant consideration for courts tasked with deciding whether to extend *Miller* principles to a young adult under the proportionate penalties clause. [Citations.] Here, we cannot overlook defendant's active participation where he invaded the victims' house with the codefendants, held a gun to Mr. W.'s head to prevent him from interfering while the codefendants robbed and attacked his family and kidnapped his young daughter, and then actively participated in the gang rape." *Id.* ¶ 40.

¶ 25        Similarly, in *People v. Carrion*, 2020 IL App (1st) 171001, the 19-year-old defendant entered the apartment of an elderly woman and stabbed her to death. He was convicted of residential burglary and murder and sentenced to 55 years' imprisonment. *Id.* ¶ 16. He sought, and was denied, leave to file a successive postconviction petition raising a proportionate penalties claim. In affirming, we held that his sentence "does not shock the moral sense of the community and thus is not cruel or degrading," because he "committed [his crimes] as the principal at the legal age of adulthood." *Id.* ¶ 30; see also *People v. Pittman*, 2018 IL App (1st) 152030, ¶ 38 (not extending *Miller* principles where the 18-year-old defendant personally stabbed three victims to death); *People v. Thomas*, 2017 IL App (1st) 142557, ¶ 34 (not extending *Miller* principles where the 18-year-old defendant "was the active shooter convicted of first degree murder using a firearm that proximately caused one victim's death").

¶ 26    In this case, defendant embarked on a mission of revenge against rival gang members, believing that they had killed his friend. He argues that he is entitled to a new sentencing hearing because the trial court did not properly consider "significant mitigating factors," including his youth, susceptibility to peer pressure, and "failure to appreciate the risks of shooting at someone down the block the instant he felt threatened." But it is not our role to second-guess the trial court's judgment. See *People v. Croft*, 2018 IL App (1st) 150043, ¶ 33 ("nothing in *Miller* *** suggests that we are free to substitute our judgment for that of the sentencing court"), appeal denied, 98 N.E. 3d 28 (2018), and cert. denied sub nom. *Croft v. Illinois*, 139 S. Ct. 291 (2018). Here, the court considered all of the statutory factors in aggravation and mitigation and appropriately emphasized defendant's personal culpability, observing that he failed to "think about the consequences of [his] actions [and] what's going to happen if [he shot] this gun."

¶ 27    In *People v. Thompson*, 2015 IL 118151, the 19-year-old defendant was convicted of two counts of first-degree murder. On appeal from the denial of his section 2-1401 petition for relief from judgment, defendant raised a *Miller* claim for the first time, which the *Thompson* court held was forfeited. *Id.* ¶ 39. Though mentioning in dicta that defendant was "not necessarily foreclosed" from raising a *Miller* claim in a successive postconviction petition, the court expressed no opinion on the merits of the claim. *Id.* ¶ 44.

¶ 28    *People v. Harris*, 2018 IL 121932, and *People v. House*, 2019 IL App (1st) 110580-B, both involved the imposition of mandatory sentences that left no discretion to the trial judge. In *Harris*, defendant received a mandatory 76-year sentence for a murder and an attempted murder he committed at the age of 18. In imposing sentence, the court stated, "I am sorry that the sentencing parameters are such that my options are somewhat limited." *Harris*, 2018 IL 121932, ¶ 16. Our supreme court rejected defendant's proportionate penalties claim on direct appeal,

finding it "premature," but reiterated that defendant was "not necessarily foreclosed" from raising his claim in a postconviction petition. *Id.* ¶¶ 46, 48.

¶ 29    A year later, in *House*, 2019 IL App (1st) 110580-B, this court vacated a mandatory natural life sentence for a 19-year-old who acted as a lookout while his fellow gang members committed a murder. In doing so, we found it significant that "[t]he [trial] court's ability to take any factors into consideration was negated by the mandatory nature of defendant's sentence." *Id.* ¶ 64. Because the sentence was mandatory, the court was precluded from taking into account defendant's potential for rehabilitation, which was "especially relevant" given his lack of physical participation in the shooting. *Id.*

¶ 30    Here, unlike in *Harris* and in *House*, the trial court's discretion to take mitigating factors into consideration was not constricted by mandatory sentencing provisions, and defendant was not convicted on a theory of accountability; he was the actual shooter. Under these facts, defendant has failed to state a legally cognizable claim under the proportionate penalties clause.

¶ 31    Defendant additionally argues that a recent change in the law demonstrates that his sentence "is shocking to the moral sense of the community" (*Leon Miller*, 202 Ill. 2d at 339). Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110); Pub. Act 101-288, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)). Under this provision, with exceptions not relevant here,

> "[a] person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence." 730 ILCS 5/5-4.5-115(b) (eff. Jan. 1, 2020).

In defendant's opinion, this statute demonstrates that "[the] community *** would be shocked" by his 35-year sentence. We disagree. Section 5-4.5-115(b) involves eligibility for parole review, not a limitation on sentencing, and is irrelevant to the issues raised in this appeal.

¶ 32                                                    CONCLUSION

¶ 33        For the foregoing reasons, we affirm the judgment of the trial court denying defendant leave to file a successive postconviction petition.

¶ 34        Affirmed.

¶ 35        JUSTICE HYMAN, specially concurring:

¶ 36        I join the majority's judgment but cannot join its reasoning. I continue to believe *People v. Handy*, 2019 IL App (1st) 170213, and the cases relying on it were wrongly decided. Importantly, a sounder and simpler way exists to resolve this case. Under *People v. Buffer*, 2019 IL 122327, only a sentence of 40 years or more implicates the constitutional protections against juvenile life sentences in *Miller v. Alabama*, 567 U.S. 460 (2012). Carmichael's 35-year sentence, which would not be a *de facto* life sentence even for a juvenile, cannot justify the filing of a successive postconviction petition for a young adult raising a *Miller* claim. That is all we need to say. Because the majority says more, I join only its judgment.

¶ 37        I have explained in detail the reasons I believe *Handy*'s focus on the defendant's heightened level of participation in the offense and the discretionary nature of a defendant's *de facto* life sentence do not justify withholding *Miller*'s protections. *E.g. People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 37-40. In short, *Miller* itself applied to offenders who were the principals in their crimes—it follows, then, that if a defendant can show *Miller* applies to him or her as a young adult, the Illinois Constitution may prohibit a life sentence even for a principal offender whose crimes are heinous. In a similar vein, our supreme court has repeatedly applied *Miller* to

discretionary sentences and so the same logic applies—if a young adult can show he or she is entitled to *Miller*'s protections, those protections do not vanish because the sentence was discretionary.

¶ 38    Of course, the necessary predicate, following *Handy* or not, turns on a young adult offender having shown *Miller* applies in the first place. The threshold requirement for applying *Miller* is the trial court imposing a life sentence or *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 27 (describing first step in *Miller* analysis as determining whether defendant "was subject to a life sentence, mandatory or discretionary, natural or *de facto*"). For juvenile offenders, only a sentence of more than 40 years is a *de facto* life sentence. *Id.*, ¶ 42. As far as I can tell, Carmichael has cited no authority for lowering *Buffer*'s 40-year ceiling for young adult offenders. His sentence, then, is not a *de facto* life sentence and *Miller* does not apply no matter his age.

¶ 39    Because I would not rely on *Handy*'s flawed analysis and because this case can be resolved without addressing *Handy* at all, I join the majority's judgment only.